28 C.C.P.A. (Patents)

## In re TORKELSON.

### Patent Appeal No. 4499.

Court of Customs and Patent Appeals.

July 3, 1941.

Stephen Cerstvik, of Bendix, N. J., and N. D. Parker, Jr., of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision. of the Board of Appeals of the United States Patent Office, affirming that of the examiner in rejecting claims numbered 3, 5, 6, 7, 9 to 16, inclusive, and 19 to 22, inclusive, embraced in appellant's application for patent for "Instrument for Use in Flying Aircraft." No claims now stand allowed, although it appears that at one time a number of them seem to have been held allowable.

The case was under prosecution in the Patent Office for a considerable period, and a brief history of the Patent Office actions upon it is deemed desirable in view of certain of appellant's reasons of appeal.

The original application was filed November 18, 1936, and different proceedings were had in which various amendments were made. After a decision of the board rendered June 25, 1938, as a result of which twelve claims seem to have been held allowable, appellant sought to have other claims, numbered 17 and 18, added under rule 78 of the Patent Office, 35 U.S. C.A. Appendix. This being denied by the examiner, appellant on August 11, 1938, forfeited his original application, notice of allowance of which had been issued. and filed a renewal application in which he included the claims Nos. 17 and 18.

Upon considering the renewed application, the examiner in two office actions cited various new references and rejected not only claims 17 and 18 but also the twelve claims which had been held allowable. Appellant then cancelled claims 17 and 18 and sought favorable action as to the other twelve. The examiner, however, adhered to his rejection of them and appellant took appeal to the board. In so doing he reinstated claims 17 and 18, renumbered 19 and 20, respectively, and added two others—Nos. 21 and 22. The proceedings with respect to the entrance of those claims culminated in a decision by the Supervisory Examiner, acting for the Commissioner of Patents, in effect directing that they be entered for the purposes of appeal.

In its first decision upon the second appeal, the board failed to list, or make specific reference to, claims 19, 20, 21 and 22, and appellant filed request for reconsideration. In a second decision the board stated, in substance, that those claims had been considered and passed upon along with the others, and the action of the examiner rejecting all the claims was again affirmed.

It appears from the statement of the examiner, made after the appeal to the board, that during the prosecution of the renewed application (as had been done during the prosecution of the original) he ruled that division was necessary as to certain of the claims, and that this question, upon request of appellant, who traversed the requirement, was submitted to the Examiner of Classification who grouped the claims as follows:

"Group I, readable only on Figure 3, claims 3 and 7.

"Group II, (elected) readable only on Figures 1 and 2, claims 5 and 10 to 13 inclusive.

"Group III, readable on Figure 4 only, claim 6.

"Generic, readable on all species, claims 9 and 14 to 18 inclusive."

Claims 21 and 22 were not embraced in the record at the time of the above grouping but it seems to be conceded here that they belong in the generic class, "readable on all species."

It further appears that the Examiner of Classification ruled, "In the absence of an allowable generic claim, division between the three groups is proper," and that appellant (along with his traversal of the examiner's rulings) elected to prosecute claims to group II; that is, as stated in the grouping made by the Examiner of Classification, claims 5 and 10 to 13, inclusive. We note that the examiner also held claims 19 to 22, inclusive, rejectable on the same grounds as claim 5, as well as upon another ground. In consequence of the election made by appellant, the examiner held that appellant was estopped from making claims 3 and 7 embraced in group I, and claim 6 embraced in group III, and this is the only ground of rejection specific to those claims. It seems proper to say that they stood rejected on the same ground at the end of the prosecution of appellant's original application, they having been so rejected by the examiner and not included in the appeal then taken to the board.

In his appeal to the board on the renewed application, appellant alleged error on the part of the examiner "in rejecting claims 3, 6 and 7 on the grounds of estoppel," but we fail to find any discussion by the board of the question of division, and appellant has not brought that question before us by any reason of appeal. Under such circumstances those claims are not properly before us for consideration on their merits.

There is nothing in the decision of the board, aside from its general affirmation of the decision of the examiner, indicating its view as to which of the claims are generic, nor do appellant's reasons of appeal, nor his brief before us, give any indication of his view as to which are generic and which are for species, although, in oral argument, counsel for appellant stated that the patentability of the generic claims must be first determined, and, in answer to inquiries from the bench, designated as generic the claims numbered, respectively, 9, 10, 14, 15, 16, and 19 to 22, inclusive.

No particular claim or claims was or were selected by the examiner as representative. The board did not quote any of the claims. The brief for appellant quotes all of them but makes no selection of any as representative of the different classes. The brief on behalf of the Solicitor for the Patent Office asserts that claim 5 illustrates the nature of the subject matter and quotes it as follows: "5. In combination, an altimeter including a fixed altitude scale, a pointer movable responsive to changes in altitude of the altimeter to indicate on said scale the altitude of the altimeter, an index, and a direction scale movable with said pointer and cooperating with said index to

indicate a definite direction for any given position of said pointer."

Claim 9 being the first of those stated by counsel for appellant in the oral argument to be generic, we quote it also: "9. In an aircraft instrument for indicating a spiralling course of an aircraft, means responsive to changes in altitude of said craft, indicating means operable upon motivation of said responsive means, dial means graduated to indicate altitude upon operation of said responsive means, and means coacting with said altitude indicating means to designate the proper direction of flight to be flown by said craft at the indicated altitude."

The case has not been presented to us in a manner which requires that the other claims be quoted and distinguished from each other as to their verbiage and limitations.

In his brief appellant describes the subject matter in the following general terms:

"The invention defined in the claims on appeal relates to indicating instruments and more particularly to a novel aircraft instrument never made before by others, namely, an aircraft indicating instrument for indicating the direction in which an aircraft is to fly for any given altitude, or, conversely, for indicating the altitude at which the aircraft is to fly for any given direction of flight.

"It has become necessary under modern flying conditions to provide means whereby aircraft, flying in what heretofore has been considered the unlimited space of the air, will not collide when flying in opposite directions.

"It has also been found necessary to provide means whereby different aircraft, in rising from and landing upon the same landing field, will be prevented from colliding when said aircraft attempt to perform their respective maneuvers simultaneously.

"In order to provide an instrument which will perform the above two required functions, appellant has devised a simple instrument wherein the operative element is an aneroid diaphragm actuated by changes in altitude, and in which the indicating element which would normally indicate the altitude cooperates with means whereby the desired direction of flight is indicated. For example, if a pilot desires to fly West, it is necessary that he fly in that direction at an elevation which will be different from that of another craft flying East. By an obser-

vation of appellant's novel indicating instrument, the pilot can tell at a glance when he has arrived at such an altitude so that he may proceed in the direction in which he desires to fly, without any chance whatever of his colliding with another similarly equipped craft flying in the opposite direction."

The specific disclosure is stated in the brief as follows:

"The novel aircraft instrument embodying the invention under consideration comprises an altimeter having a pressure responsive element in the form of an aneroid diaphragm 15 which expands with decrease in pressure produced by an increase in altitude as the instrument is lifted into the atmosphere on board an aircraft. As seen in Figs. 1 and 2 of the drawings * * *, the expansion of the diaphragm 15 actuates a pointer 11 to move over a scale 10 upon which the indication of the elevation or altitude is shown in feet by graduations 22. If desired, the altitude can also be represented by inches of mercury or millibars (0.76 millimeters of mercury equals one millibar). These different indications of the altitude can be utilized simultaneously or separately, it being common practice in English-speaking countries, however, to combine the indications of altitude in both thousands of feet and inches of mercury, or thousands of feet and millibars.

"The expansion of the aneroid diaphragm 15 also actuates a rotatable dial 23 carrying direction indications thereon which appear in an opening 26 of the dial 10 (see Fig. 1) so that at any indicated altitude as, for example, 1,000 feet shown in Fig. 1, the rotatable dial 23 shows that a direction of East should be flown. If the aviator desires to fly West, he continues to climb until the West indication appears in the aperture 26. At that time, he will be flying at such an altitude that another aircraft equipped with a similar device and flying in the opposite direction will be flying at a different altitude so that the two craft cannot collide.

"Also, in taking off from an airport, the instrument indicates, in addition, the direction of spirals to be taken by the pilot during the take-off, because upon increasing altitude the directions appear in one sequence in the opening 26, while the sequence will appear in reverse for an airplane circling to locate the landing field preparatory to landing thereon. The two craft will, therefore, spiral in opposite directions and collision will again be avoided.

"In Figs. 3 and 4 are shown further embodiments of appellant's invention. In Fig. 3, for example, the pointer 11 a indicates the direction to be flown at an achieved elevation, and if the direction is not that desired by the pilot he continues to climb until the pointer indicates his desired direction by means of the direction graduations 24a and 25a. At that altitude he will be flying at a different elevation from any plane similarly equipped and flying in the reverse direction."

An unusual feature of the case is the number of references which, first and last, were cited.

In the appeal to the board upon the original application only one reference was cited, it being a British patent to one Asten, 2,853, August 29, 1907, but in the examiner's statement following the appeal to the board on the renewal application seventeen additional references were cited and they are listed in the board's decision along with the patent to Asten as follows: Moller, 459,977, Sept. 22, 1891; Lachapelle, 878,481, Feb. 4, 1908; Jones, 1,040,345, Oct. 8, 1912; Deardorff, 1,068,112, July 22, 1913; Richards, 1,140,530, May 25, 1915; Dixon et al., 1,272,396, July 16, 1918; Fanshier, 1,281,-321, Oct. 15, 1918; Brown, 1,306,575, June 10, 1919; Roesch, 1,351,130, Aug. 31, 1920; Boyce, 1,647,171, Nov. 1, 1927; Loughrin, 1,671,432, May 29, 1928; Menk, 1,701,957, Feb. 12, 1929; Melik-Minassiantz, 1,942,343, Jan. 2, 1934; Walker, 1,829,771, Nov. 3, 1931; Carbonara, 1,966,753, July 17, 1934; Peace, Re. 19,709, Sep. 17, 1935; Coffey, 2,100,837, Nov. 30, 1937.

It seems somewhat remarkable, in view of the relative simplicity of appellant's claimed invention, that so many references should have been thought necessary to depict the state of the art, but it is evident that the examiner sought to fortify his original adverse holding by citing all that he could find, and this was proper.

In its decision on the second appeal, the board made specific reference to only two of the cited patents, to wit, that to Asten and that to Boyce, but it did refer generally to "these patents," saying:

"On the prior appeal the only reference relied on by the examiner was the British patent to Asten. This patent shows an ordinary aneroid barometer calibrated in terms of elevation, the height of mercury column and weather probabilities associated with these mercury column heights. As we pointed out in our former decision, these various indicia on the barometer dial were merely equivalent designations of substantially the same thing.

"No reference was cited which showed it old to note alongside any measuring scale arbitrary instructions with respect to a course to be pursued or some specific action to be taken. This deficiency has now been supplied particularly in the references from the route-indicator art, which shows devices capable of indicating a measure of distance traveled along the ground and bearing alongside this distance indicia instructions to the driver of the vehicle with respect to turns to be made, or the like.

"With respect to these patents, it is urged that they are useful only for a given route and not of general utility. However, it seems to us that they sufficiently show the expedient of associating with distance indicia some instructions which have a more or less arbitrary relation to the various distances shown by the primary indicating means. We are unable to see that the particular application of this broad idea here involved required anything more than mechanical skill.

"Such of the claims as involve specific indicator structure are substantially met by the references. The Fig. 3 species involves nothing more than an ordinary movable pointer associated with a dial of a disk type bearing the two types of indicia. This type of indicator is shown in various references; for instance, the Asten patent heretofore cited."

With respect to the Boyce patent the board said: "The specific indicating means of Fig. 1, wherein a portion of the data is carried by the fixed dial and a portion by a movable dial mounted on the indicator shaft is shown in the patent to Boyce."

The board also said: "The utilization of dial and pointer mechanism such as shown in these references for appellant's particular purpose does not, in our opinion, involve the exercise of invention."

The brief on behalf of appellant contains a terse analysis of each of the reference patents cited and points out various distinctions between their respective features and certain of the features embraced in his combination, and the accuracy of his analysis is not questioned in the brief of the Solicitor for the Patent Office. These have been studied by us, and it is our conclusion that no combination of the references fully meets the combination of appellant. Indeed, when the decisions below

are carefully studied, we think that that is conceded there, but it was held that such changes as were made by appellant, as well as his application of certain of the features of the prior art, to his device were not inventive.

■ Considering the nature of appellant's device and the field in which he was working, we feel constrained to disagree with the tribunals of the Patent Office both as to the broad, or generic, claims and the species claims embraced in group II, supra.

■ We have considered the situation in which claims 3, 6, and 7 may be left by a reversal of the board's decision as to all the other claims including the generic claims. These, as has been indicated, were not considered on their merits by the tribunals below and, as of course, have not been so considered by us. It is proper, under this decision, that they now receive consideration on their merits by the proper tribunals of the Patent Office, and to this end the correct procedure seems to be to remand the case.

For the reasons indicated, the decision of the board is reversed as to claims 5, 9 to 16, inclusive, and 19 to 22, inclusive. It is also reversed as to the requirement for division relating to claims 3, 6, and 7, and the case is remanded for the further consideration of the last three claims in conformity with the rules of the Patent Office and the views herein expressed.

Reversed and remanded.